No. 3--04--0533

filed April 19, 2006
IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

KELLY PAGELOFF and DALE          )    Appeal from the Circuit Court
PAGELOFF,                        )    of the 14th Judicial Circuit,
                                 )    Whiteside County, Illinois
        Plaintiffs-Appellants,   )
                                 )
            v.                   )    No.  03--L--18
                                 )
MAXINE GAUMER and RUFFIT         )
                                 )
PARK,                            )
                                 )    Honorable Timothy J. Slavin,
        Defendants-Appellees.    )    Judge, Presiding.

PRESIDING JUSTICE SCHMIDT delivered the opinion of the court:

While camping at defendants' campground, plaintiff, Kelly
Pageloff, stepped on a walnut and fell.  Plaintiffs filed a
common law negligence and loss of consortium action against
defendants, Maxine Gaumer and Ruffit Park (hereinafter,
collectively Gaumer).  The circuit court of Whiteside County
granted defendants' motion for summary judgment.  Plaintiffs
appeal.

BACKGROUND

Like many Americans, plaintiffs apparently enjoy getting

away from their home and camping in the great outdoors. They own their own camper. During Labor Day weekend 2001, the Pageloffs went camping at Ruffit Park, which was owned by Maxine Gaumer. Gaumer owned Ruffit Park for nearly 40 years and oversaw the maintenance and operation of the campground property. The Pageloffs had camped at Ruffit Park many times. At the time that Kelly Pageloff called Gaumer to make a reservation for Labor Day weekend, she requested their usual campsite.

When the Pageloffs arrived at Ruffit Park, the site they had requested was still occupied by another camper so Gaumer offered another site. The Pageloffs were dissatisfied with this other site, but they chose to stay at Ruffit Park instead of returning home. Walnut trees were adjacent to this campsite, and for the entire weekend walnuts, as they are prone to do in late summer, fell off the trees onto the site. What might have been a baker's dream, turned into plaintiffs' nightmare: walnuts everywhere. During her deposition, Kelly stated that she and Dale had been cleaning the fallen walnuts up all weekend and that the walnuts "were everywhere" and "everywhere you tried to walk." Falling walnuts even damaged plaintiffs' camper. Notwithstanding the unrelenting barrage of falling nuts, plaintiffs remained on the campsite. The Pageloffs brought a rake with them and used it to clean walnuts from the campsite during the entire weekend. Three days after their arrival, while cleaning up the campsite to go

2

home, Kelly stepped on a walnut and fell, suffering a rather severe injury to her left ankle. She did not know how long the offending nut had been on the ground.

The Pageloffs filed a two-count complaint against Gaumer and Ruffit Park. Count I is a common law negligence claim for Kelly's injuries and count II is a claim by Dale for loss of consortium. Gaumer filed a motion for summary judgment in which she argued that she did not owe Kelly a duty to clear the walnuts from the campsite nor did she owe a duty to warn because the risks associated with walnuts were open and obvious. Gaumer also argued that Kelly assumed the risk of injury by choosing to camp at Ruffit Park. The trial court granted Gaumer's motion for summary judgment.

ANALYSIS

On appeal, the reviewing court applies a *de novo* standard of review to a grant of summary judgment. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18, 20 (2002); *Majca v. Beekil*, 183 Ill. 2d 407, 416, 701 N.E.2d 1084, 1088 (1998). Thus, the reviewing court, viewing the evidence in the light most favorable to the nonmovant, must determine whether a genuine issue of material fact exists and whether the moving party is entitled to a judgment as a matter of law. *Majca v. Beekil*, 183 Ill. 2d at 416, 701 N.E.2d at 1088.

I. Duty

3

To recover damages based upon a defendant's alleged negligence, a plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256, 720 N.E.2d 1068, 1071 (1999). Whether or not a duty of care exists is a question of law that may be determined on a motion for summary judgment. *Curatola v. Village of Niles*, 154 Ill. 2d 201, 207, 608 N.E.2d 882, 885 (1993). The operator of a business owes his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition for use by the invitees. *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141, 554 N.E.2d 223 (1990). It is undisputed that Gaumer owed the Pageloffs a duty to maintain Ruffit Park in a reasonably safe condition.

Therefore, we must determine whether Gaumer's duty to maintain Ruffit Park in a reasonably safe condition includes a duty to clear fallen walnuts from the Pageloffs' campsite or, alternatively, to warn of the walnuts.

In order to determine whether a duty is owed, the courts consider four factors: (1) the likelihood of injury; (2) the reasonable foreseeability of such injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of imposing that burden on the defendant. *Bucheleres v. Chicago*

4

*Park District*, 171 Ill. 2d 435, 450, 665 N.E.2d, 826, 833 (1996).

The first two factors lend little to the imposition of a duty here. First, the law generally considers the likelihood of injury slight when the condition in issue is open and obvious because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks. *Bucheleres v. Chicago Park District*, 171 Ill. 2d at 456, 665 N.E.2d at 836. "In contrast, if a danger is concealed or latent, rather than open and obvious, the likelihood of injury increases because people will not be as readily aware of such latent danger." *Bucheleres v. Chicago Park District*, 171 Ill. 2d at 456, 665 N.E.2d at 826. Plaintiffs do not argue that the risks were latent or concealed. They were well aware of the existence of the walnuts on the ground. The risks of stumbling or tripping on a walnut at Ruffit Park campground is even more open and obvious than the risk of diving head first into the murky waters of Lake Michigan (see *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 665 N.E.2d 826). At least the hazard is visible.

The legal concept of reasonable foreseeability of injury arising from open and obvious conditions takes into account that even young, unsophisticated, or immature people are generally assumed to appreciate the risks associated with such conditions and, therefore, exercise care for their own safety. *Bucheleres*

5

*v. Chicago Park District*, 171 Ill. 2d at 456-57, 665 N.E.2d at 836. The plaintiffs are adults.

The last two factors meditate heavily against finding a duty here. The magnitude of the burden of guarding against injury would be beyond onerous. Imposing the burden on a landowner would have obvious consequences. Practically speaking, you could not have walnut trees on campgrounds. Like the snow from the sky in winter, nuts fall from walnut trees in the late summer. Gaumer asks us to apply the natural accumulation rule, heretofore reserved for snow and ice. While not controlling, we find the law in this area to be instructive.

A landowner does not have a duty to remove natural accumulations of ice or snow from his premises. *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 279, 633 N.E.2d 1307, 1310 (1994). Illinois courts have consistently found that a landowner does not have a duty to keep his or her premises safeguarded against the potential dangers of naturally accumulated snow and ice because it would be unreasonable to force a landowner to expend the money and labor necessary to constantly keep the area safe. *Kellermann v. Car City Chevrolet-Nissan, Inc.*, 306 Ill. App. 3d 285, 290, 713 N.E.2d 1285, 1289 (1999). In our opinion, it would be no less onerous to require a landowner to remove all walnuts that fall from trees on his or her property, than it would be to require removal of all natural

6

accumulations of snow and ice.  It is unreasonable to impose such a duty on every landowner.  Of course, defendants could cut down all of the nut-bearing trees and pave their property.  That might make for a safer campground.  Most likely one devoid of campers, too.  Gaumer did not have a duty to keep the ground free of walnuts.

We, likewise, hold that there is no duty to warn of the risks inherit in wooded campgrounds.  Where there are trees, there will likely be twigs, branches, nuts, or leaves on the ground below them.  A warning would only tell campers what they already know: walnuts on the ground create an uneven walking surface and, therefore, a potential for a trip or fall.  See *Sollami v. Eaton*, 201 Ill. 2d 1, 772 N.E.2d 215 (2002).

The Pageloffs claim that the walnut trees are an integral component of the Ruffit Park commercial enterprise, that the walnuts which fall from these trees are inseparable from the trees and, therefore, Gaumer effectively placed the walnuts on the ground and caused Kelly's injury.  This argument, too, is without merit.  The cases cited by the Pageloffs to support this position are clearly distinguishable.  They involve foreign substances actually placed on the land by the owner.  See *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149, 650 N.E.2d 258 (1995) (plaintiff slipped on floor mats placed inside the store); *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113, 148 N.E.2d 434

7

(1958) (plaintiff slipped on an onion on the floor of the defendant restaurant and the evidence indicated that a busboy knocked the onion to the floor while cleaning a table); *Rutzen v. Pertile*, 172 Ill. App. 3d 968, 527 N.E.2d 603 (1988) (plaintiff injured when stepping on a rotted portion of a dock pier at the defendant's supper club); *Piper v. Moran's Enterprises*, 121 Ill. App. 3d 644, 459 N.E.2d 1382 (1984) (plaintiff injured while standing on wooden pallets which the store had placed inside to reach a case of pop in defendant's store). Kelly did not fall in a restaurant, a grocery store, or a supper club; she alleges that she fell after stepping on a walnut in a wooded campground.

Therefore, based upon our consideration of all of the relevant factors, we conclude that Gaumer breached no duty owed to plaintiffs.

## II. Assumption of Risk

Because we have found that defendants breached no duty owed to the plaintiffs, we need not address defendants' assumption of the risk argument. However, we note in passing that under the facts presented in this case, plaintiffs clearly assumed any risks associated with the falling or fallen walnuts.

## CONCLUSION

The judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

8

HOLDRIDGE and O'BRIEN, JJ., concur.